**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-02308-CMA-CBS

THE HOME LOAN INVESTMENT COMPANY, a Colorado corporation,

     Plaintiff,

v.

THE ST. PAUL MERCURY INSURANCE COMPANY,
d/b/a or a/k/a TRAVELERS, a Connecticut corporation,

     Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S POST-TRIAL MOTION REGARDING DAMAGES, ATTORNEY FEES AND COSTS, PRE-JUDGMENT INTEREST, AND REQUEST FOR ENTRY OF FINAL JUDGMENT**

---

The parties, Home Loan Investment Company ("Home Loan") and St. Paul Mercury Insurance Co., d/b/a Travelers ("Travelers"), tried this insurance-related matter to a jury in June of 2014. The jury found in favor of Home Loan as to both of its claims. Specifically, the jury determined that Travelers (1) breached its insurance contract with Home Loan, and (2) unreasonably denied payment of Home Loan's insurance claim pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116 (Doc. # 77.) Home Loan now requests damages, attorney fees and costs, a pre-judgment interest award, and an entry of final judgment (Doc. # 78.) As explained below, this Motion is GRANTED IN PART and DENIED IN PART.

The parties do not dispute the amount of the covered benefit ($466,483), but do dispute the amount of permissible statutory damages. Home Loan contends that an

insured party may recover two times the covered benefit as statutory damages under Colo. Rev. Stat. § 10-3-1116 **in addition to** the covered benefit itself.  Travelers counters that Home Loan may only recover a total amount of two times the covered benefit, and that this recovery is inclusive of the covered benefit.   As explained below, the Court adopts the decision of the Colorado Court of Appeals in *Hansen v. American Family Mutual Ins. Co.*, 2013 COA 173, ¶ 61, and holds that Home Loan may recover the covered benefit as well as statutory damages of twice the covered benefit, pursuant to Colo. Rev. Stat. § 10-3-1116(1).

As for attorney fees, the Court may award reasonable attorney fees under Colo. Rev. Stat. § 10-3-1116(1).  With a single exception, Travelers concedes that Home Loan's counsel spent a reasonable number of hours litigating this case.  However, Travelers argues that Home Loan's hourly rates for work are unreasonable.  The Court agrees, and approves modified attorney fees.

Regarding costs, the Court holds that Home Loan may recover some of its costs, with several exceptions (including its expert witness fees and mediation costs), as detailed below.

As for prejudgment interest, Home Loan may recover 8% interest on its unpaid covered benefits as of November 21, 2011 – i.e., the date of Travelers' denial of its insurance benefits.  Home Loan also may recover postjudgment interest after the date of final judgment at the federal postjudgment interest rate.

### I. **STATUTORY DAMAGES UNDER COLO. REV. STAT. § 10-3-1116(1)**

Colorado law provides that when an insurer unreasonably delays or denies a claim for a covered benefit, an insured party "may bring an action in a district court to recover reasonable attorney fees and court costs **and two times the covered benefit**." Colo. Rev. Stat. § 10-3-1116(1) ("Section 1116(1)") (emphasis added).  State law also provides that such an action "is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future.  Damages awarded pursuant to this section shall not be recoverable in any other action or claim."  *Id.* § 10-3-1116(4) ("Section 1116(4)").

In the instant action, Home Loan argues that it is entitled to damages equal to $1,399,449.00, consisting of: (1) the covered benefit itself ($466,483.00), *i.e.*, the damages from its breach of contract claim, and (2) the statutory damages authorized under Section 1116(1), *i.e.*, two times the covered benefit ($932,966.00).  In contrast, Travelers interprets Section 10-3-1116(4) as effectively limiting an insured's total recovery, such that Home Loan's recovery of two times the covered benefit under Section 1116(1) is **inclusive of** the recovered benefit itself.  (*Id.* at 6-7.)  Both parties point to the plain language of the statute in support of their respective interpretations.

As a preliminary matter, the Court notes that in cases arising under diversity jurisdiction, as here, the Court's task is not to reach its own judgment regarding the substance of the common law, but simply to "ascertain and apply the state law."  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007) (internal quotation marks omitted).  Where no controlling state law exists, the federal court must endeavor to

predict what the state's highest court would do if it were faced with the same facts and issues. *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). In making that prediction, a court considers "analogous decisions by the [state] Supreme Court, the decisions of the lower courts in [the state], the decisions of the federal courts and of other state courts." *Phillips v. State Farm Mut. Auto. Ins. Co.*, 73 F.3d 1535, 1537 (10th Cir. 1996); *see also Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) (noting that a federal court applies what it finds to be the state law after giving "proper regard" to the relevant rulings of other courts in the state). In particular, the decision of an intermediate appellate state court "is a datum for ascertaining state law **which is not to be disregarded by a federal court** unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Stickley,* 505 F.3d at 1077 (emphasis added) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

Although there is no controlling Colorado Supreme Court authority, the Colorado Court of Appeals recently held that an insured party may recover the amount of an unreasonably delayed or denied covered benefit **as well as** two times the amount of that covered benefit in statutory damages under Section 1116(1). *Hansen*, 2013 COA 173, ¶ 61. Citing traditional standards of statutory interpretation, the Court of Appeals rejected the precise argument Travelers makes here, explaining that Section 1116(1) expressly created a new right of action with a concomitant remedy of "reasonable attorney fees and court costs and two times the covered benefit." *Id.*, ¶ 60 (quoting Section 1116(1)). Accordingly, an insured party's total recovery (excluding attorney

fees and costs) could amount to three times the covered benefit, consisting of "awards aris[ing] from different claims: one-third . . . from the claimant's breach of contract claim, and two thirds from her statutory claim under [S]ection 10–3–1116."  *Id.,* ¶ 61.

The Court of Appeals reasoned that Section 1116(4)'s plain language – providing that the cause of action was "in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future" – clearly anticipated that an insured party could simultaneously bring **both** a common-law breach of contract claim to recover any unpaid benefits to which he or she was entitled, **and** a Section 1116(1) claim for either delay or denial of those benefits.  *Id.,* ¶ 62 (citing *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1110-12 (D. Colo. 2012) (concluding that although an insured's "total receipt" of damages from a combined breach of contract claim and a 1116(1) claim could amount to three times the benefits at issue in his or her Section 1116 claim, that "receipt would derive from multiple sources . . . . which is different from receiving three times the covered benefit directly and entirely from the [S]ection 1116 claim").[1]

---

[1] Although neither party analyzed the relevant legislative history in its brief, the Court of Appeals' interpretation in *Hansen* is entirely consistent with that history.  In proposing the legislation that eventually became Section 1116, then-state Representative Andrew Romanoff described the bill as "increas[ing] the penalties on companies that unreasonably delay or deny payments by offering consumers . . . a private right of action **beyond the remedies in existing law**." Hearing on H.B. 1407 Before the H. Comm. on Business Affairs & Labor, 66th Gen. Assemb., 2d Sess. (Apr. 24, 2008) (emphasis added). Additionally, the "Bill Summary" of the final bill stated that the legislation would "create a cause of action" allowing a claimant "to recover 2 times the actual damages sustained."  An Act Concerning Strengthening Penalties for the Unreasonable Conduct of An Insurance Carrier, and Making an Appropriation in Connection Therewith, H.B. 08-1407, 2008 Sess. (CO. 2008), *available at* http://www.leg.state.co.us/clics/clics2008a/csl.nsf/fsbillcont3/D26CDE1842EE880E872573F500

Travelers argues that the second sentence of Section 1116(4) – providing that "[d]amages awarded **pursuant to this section** shall not be recoverable in any other action or claim" – indicates that an insured party is precluded from also recovering the covered benefit amount. (Doc. # 87 at 7) (quoting Section 1116(4)) (emphasis added). Although the Court of Appeals did not explicitly analyze the import of this second sentence in *Hansen*, Travelers' interpretation contravenes the plain language of the statute, because damages awarded pursuant to a breach of contract claim would not be awarded "pursuant to this section" (i.e., Section 1116(1)), but rather, would be awarded for an entirely different claim (i.e., a successful breach of contract claim). Additionally, Colorado law provides that this Court must give effect to the intent of the legislature by construing the plain language of the statute as a whole and giving "consistent, harmonious, and sensible effect" to all of its parts – including both of the sentences in Section 10-3-1116(4). *See St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 2014 CO 33, ¶ 10, 325 P.3d 1014, 1019 (Colo. 2014); *see also Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) ("A statutory interpretation leading to an illogical or absurd result will not be followed"). Travelers' interpretation is directly at odds with the first sentence in Section 1116(4), which provides that a claim for damages under Section 10-3-1116 is "in addition to, and does not limit or affect other actions available by statute or common law, now or in the future." Accordingly, the Court concludes that

---

562BD9?Open&file=HB1407_f1.pdf (last visited November 19, 2014). Accordingly, Section 1116 does not preclude a party from receiving the remedies of existing law, that is, breach of contract remedies; instead, it creates a new cause of action with separate, additional damages. This cause of action merely uses the actual damages figure as a kind of "yardstick" for measuring these separate, additional damages.

Section 1116(4) does not bar traditional, "benefit of the bargain" damages for a breach

of contract claim (such as that brought here), but rather, bars a plaintiff from recovering

both the penalty damages under 1116(1) **and** other, separate penalty damages derived

from different claim, such as a violation of the Colorado Consumer Protection Act.

*Etherton v. Owners Ins. Co.*, No. 10-CV-00892-PAB-KLM, 2013 WL 5443068, at *2-3

(D. Colo. Sept. 30, 2013).

The Court of Appeals' decision in *Hansen* is not only well reasoned and sound,

but Travelers has also failed to convince the Court that the Colorado Supreme Court

would decide this issue differently than the Court of Appeals.[2]  *See Stickley*, 505 F.3d at

1077. Indeed, the handful of federal cases interpreting Section 10-3-1116 have carefully

and cogently rejected Travelers' arguments.[3]  *See Etherton,* 2013 WL 5443068 at *3;

*Rabin*, 863 F. Supp. 2d at 1110-12; *D.R. Horton, Inc. Denver v. Mountain States Mut.*

*Cas. Co.*, No. 12-CV-01080-RBJ, 2013 WL 6169120, at *6-7 (D. Colo. Nov. 25, 2013).

Although Travelers cites several state district court cases supporting its interpretation

---

[2] The Court notes that the Colorado Supreme Court recently granted *certiorari* review of
*Hansen.  See Am. Family Mut. Ins. Co. v. Hansen*, No. 14SC99, 2014 WL 5510047, at *1 (Colo.
Nov. 3, 2014).  This fact alone does not constitute evidence that the court will overturn *Hansen*;
the Colorado Appellate Rules indicate that there are a variety of reasons why the court grants
such review, including, as applicable here, that the Court of Appeals' decision addressed an
issue of first impression and the existence of conflicting decisions between state district courts.
*See* C.A.R. Rule 49(a)(1), (2).

[3] Travelers cites *C&M Towing & Recovery, Inc. v. Redland Ins. Co.*, 2010 WL 326335, at *1,
*1 n.1 (D. Colo. 2010), in which Judge Kane concluded that a party failed to meet the federal
amount in controversy requirement.  In *C&M Towing & Recovery Inc.*, Judge Kane subtracted
the covered benefit from the allowable statutory damages under Section 1116(1).  However,
the Court does not find this case to be persuasive authority in support of Travelers' position:
in making a preliminary jurisdictional decision, Judge Kane did not explicitly decide this issue
(indeed, his analysis was confined to a single footnote and it appears that the plaintiff did not
argue that it was entitled to two times the covered benefit under Section 1116 **and** the covered
benefit itself).  Additionally, Judge Kane made his decision without the benefit of *Hansen.*

of Section 10-3-1116, *see* (Doc. # 87 at 4), the Court has fully reviewed and considered these decisions, and disagrees with the statutory interpretation therein, for the reasons provided above.

Accordingly, Home Loan is entitled to recover $1,399,449.00 in damages, consisting of:  the covered benefit itself ($466,483.00), **and** two times the covered benefit ($932,966.00).

## II.  ATTORNEY FEES

### A. Legal Standard

Colo Rev. Stat. 10-3-1116(1) authorizes an insured party whose claim for payment of benefits has been unreasonably delayed or denied to recover "reasonable attorney fees and court costs."  As a general rule in diversity cases, if "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."   *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1177 (10th Cir. 2000) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n. 31 (1975)).  Accordingly, although both parties assessed the reasonableness of a fee award under federal law, the Court applies state law in determining the reasonableness of the attorney fees in this case.

A party seeking attorney fees bears the burden of proving by a preponderance of the evidence that it is entitled to such an award.  *Kinsey v. Preeson*, 746 P.2d 542, 551-52 (Colo. 1987).  A court makes an initial estimate of a reasonable attorney fee by calculating the lodestar amount.  *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143,

147 (Colo. App. 1996).  The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate.  *Id.* The court's calculation of the lodestar carries with it a strong presumption of reasonableness.  *Payan v. Nash Finch Co.,* 2012 COA 135, ¶ 18 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The court may then adjust this amount based on the factors outlined in Colo. RPC 1.5,[4] including: (a) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (b) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (c) the fee customarily charged in the locality for similar legal services.  *People v. Shifrin*, 2014 COA 14, ¶ 113.  When, as here, a statute providing for a fee award does not furnish a specific definition of "reasonableness," the amount must be determined in light of all the circumstances, based upon the time and effort reasonably expended by the prevailing party's attorney.  *Tallitsch*, 926 P.2d at 147.

---

[4] Colo. RPC 1.5 provides that the following factors are to be considered by the court in determining the reasonableness of a fee:

    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
    (3) the fee customarily charged in the locality for similar legal services;
    (4) the amount involved and the results obtained;
    (5) the time limitations imposed by the client or by the circumstances;
    (6) the nature and length of the professional relationship with the client;
    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
    (8) whether the fee is fixed or contingent.

**B. The Lodestar Calculation in the Instant Case**

The Court begins by determining the reasonable number of hours expended by counsel working on the case. *Payan v*, 2012 COA, ¶ 21 (citing *Hensley*, 461 U.S. at 434). Here, Home Loan's attorneys and staff have submitted timekeeping records that provide specific, detailed descriptions of their work. Travelers does not object to the substantiation of the time spent by Home Loan's counsel, nor to the number of hours spent on this case – with a single exception regarding the recoverability of time spent in preparation of the instant Motion. Therefore, barring time spent on the instant Motion (as discussed below), the Court concludes that the number of hours spent on this action was reasonable. *See Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, No. 03-2148-KHV, 2005 WL 361510, at *3 (D. Kan. Feb. 15, 2005) ("Defendant does not object to the number of hours expended . . . . The Court therefore finds that plaintiff reasonably expended the hours reported.")

A trial court should base the hourly rate on the prevailing market rate of private lawyers in the community. *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 588–89 (Colo. App. 2000); *see also* Colo. RPC 1.5(3), *(7) (listing the fee customarily charged in the locality for similar legal services and the experience, reputation, and ability of the lawyers performing the services as relevant factors in determining appropriate attorney fees). The trial court is vested with broad discretion to determine whether the fees requested by a particular legal team are justified for the particular work performed and the results achieved in a particular case. *Payan*, 2012 COA, ¶ 46; *see also Am. Water Dev., Inc. v. City of Alamosa*, 874 P.2d 352, 388 (Colo. 1994) ("Having participated in

each stage of the proceeding, the trial judge was capable of understanding what was reasonably expended in attorney fees.")

Here, Travelers argues that the proposed lodestar amount is unreasonable due to the hourly rate charged by the partners, associates and paralegal who represented Home Loan in this action.  These rates are provided below:

| Name and Title | Years of Experience[5] | 2012 Rate | 2013 / 2014 Rate |
|---|---|---|---|
| Mr. Quiat (Partner) | 29 | $545 | $570 |
| Mr. Curtis (Partner) | 11 | $375 | $400 |
| Mr. Schact (Associate) | 4 | $285 | $315 / $330 |
| Ms. Donnelly (Associate) | 7 | $290 | |
| Mr. Thompson (Associate) | 1 | | $230 |
| Ms. Bliss (Paralegal) | Not provided | $215 | $225 / $230 |

The instant Motion is supported by the Declaration of Laurin D. Quiat ("The Quiat Declaration") (Doc. # 78-1).  Mr. Quiat is a partner at Baker & Hostetler LLP, and his Declaration details the number of years of experience and the educational backgrounds of the attorneys who litigated the instant case.  It attaches a 2014 "Survey of Law Firm Economics" from the National Law Journal, a "2012 Economic Survey Snapshot" from the Colorado Bar Association, and a "2010 Economic Survey" from the Colorado Bar

---

[5] The Declaration of Laurin D. Quiat (Doc. # 78-1), submitted in support of the instant Motion, provided the law school attended by the relevant attorney, the date of the attorney's graduation from that law school, and when the attorney began practicing "in the state and federal courts of Colorado." (*Id.* at 2.)  The Court assumes that the number of years of practice in Colorado were equal to the attorney's number of years of experience as no further information was provided. Mr. Thompson is listed here as having one year of experience because he passed the bar exam in 2013 (either May of 2013 or February of 2013) (doc. # 78-1 at 2), and the billing records reflect that he worked on this case in March of 2014 (Doc. # 78-7 at 66-9).

Association.  *See* (Doc. ## 78-1 at 2, 78-8, 78-9, 88-1).  Home Loan's brief in support of the instant Motion also cites five cases approving somewhat-similar rates to those Home Loan is requesting here.  (Doc. # 78 at 8.)

The Quiat Declaration states that Mr. Quiat is a senior partner with 29 years of experience; that Mr. Curtis is a partner with 11 years of experience; and that associates Mr. Schacht, Ms. Donnelly, and Mr. Thompson have four, seven, and one year of experience, respectively.  (Doc. # 78-1 at 2.)  It lists the law schools attended by the lawyers and their graduation dates, but does not provide further information regarding their qualifications, nor does it cite similar fee awards that have been won by the attorneys in the past.  (*Id.*)

Only two of the cases cited by Home Loan arguably support the high rates it is requesting for Mr. Quiat ($545 / $570 per hour) and Mr. Curtis ($375 / $400 per hour), and none support the requested rate of compensation for paralegal work ($215 / $225 / $230 per hour).  In *Rocky Mountain Christian Church v. Board of County Commissioners of Boulder County*, No. 06-cv-00554-REB-BNB, 2010 WL 3703224, at *4-5 (D. Colo. Sept. 13, 2010), Judge Blackburn approved an hourly rate of $547.32 for an appellate litigator.  Travelers contends that the unique circumstances of *Rocky Mountain Christian Church* required specialized skills which justified the higher hourly rates approved in that case, and that these unique circumstances do not exist here. The Court agrees.  Specifically, *Rocky Mountain Christian Church* was on appeal to the Tenth Circuit and implicated "many" esoteric issues of constitutional law as well as a statute with relatively undeveloped case law; accordingly, Judge Blackburn held that

it was reasonable for the appellees to hire an attorney from Washington, D.C. with "specialized knowledge and skills in the areas of constitutional law, including the First Amendment, and appeals in the federal courts of appeal." *Id.* at *5.

Home Loan also cites *Biax Corp v. NVIDIA Corp.*, No. 09-cv-1257-PAB-MEH, at *6 (D. Colo. 2013). In *Biax*, Judge Brimmer approved an hourly rate in the $700 per hour range for a senior partner with over 35 years of experience, and an hourly rate in the $600 per hour range for a partner with 15 years of experience. *Id.* However, *Biax* was a patent lawsuit, and Judge Brimmer specifically noted that the rates he approved were only reasonable "given the complexity of the subject matter, the high stakes of the case, and the contentiousness of the dispute." *Id.* at *7.

In contrast, this case required some experience in commercial litigation but little specialized knowledge. It was a relatively straightforward breach of contract and bad faith denial suit – albeit one with high monetary stakes. Although Home Loan's counsel notes that an adverse verdict would have been costly, it does not provide sufficient evidence that this case involved such uniquely complex or esoteric issues to justify such a significant upward deviation from the fees customarily charged in this locality for similar legal services. See Colo. RPC 1.5(3).

In opposition to Home Loan's Fee Motion, Travelers submitted an affidavit from Robert M. Baldwin, an expert witness with thirty years of experience in insurance law. (Doc. # 87-5.) Mr. Baldwin opined that a reasonable range for experienced insurance attorneys would be $350 for both Mr. Quiat and Mr. Curtis, $225 an hour for Mr. Schact, $200 an hour for Mr. Donnelly, and $175 an hour for Mr. Thompson. (*Id.* at 2); *see also*

*Payan v. Nash Finch Co.*, 310 P.3d 212, 222 (Colo. App. 2012) (approving an hourly

rate of $350 for a senior partner and $200 for a junior associate).  These numbers

are quite a bit lower than what Home Loan is requesting, but closer to the reported

prevailing market rates provided by Home Loan in the Denver area.  Although

Mr. Baldwin's affidavit did not provide any detail regarding his precise experience

in insurance law, the Court believes that this case was not especially complex, and

accordingly, his opinion was helpful to the Court.  However, the Court recognizes that

the rates suggested are lower than many of the numbers provided by the CBA Survey,

particularly when it comes to the rates charged by larger law firms.  Further,

Mr. Baldwin's proposed reasonable rates fail to reflect the significant differences

in experience between Mr. Quiat and Mr. Curtis.  The Court also recognizes Home

Loan's counsel provided a large "professional discount" to Travelers, and it does not

want to discourage law firms from providing such discounts prior to requesting attorney

fees.

After careful consideration of all of the relevant variables provided in Colo. RPC

1.5 – especially the complexity of the case, the amount in controversy, the experience

of the lawyers, and the favorable results obtained for Home Loan – as well as the

numbers from the "2012 Economic Survey Snapshot" from the Colorado Bar

Association ("the CBA Survey"),[6] which provide a helpful baseline in determining

the customary rates in the community for lawyers of reasonably comparable skill,

---

[6] The Court has thoroughly studied the rate surveys submitted in support of the instant Motion and believes that because the 2012 CBA survey provides the most recent data and is specific to Colorado, it provides the best indication of the current reasonable hourly rate in the Denver area.

experience, and reputation, the Court determines that the following hourly rates are reasonable in this case ("the approved rates"):

- $420 an hour for Mr. Quiat (in recognition of his almost-30 years of experience);
- $375 an hour for Mr. Curtis (in recognition of his eleven years of experience);
- $250 an hour for Mr. Schact and Ms. Donnelly; and
- $175 an hour for Mr. Thompson (in recognition of his newly-minted attorney status).

These rates are very much in line with the CBA Survey data, which indicated that the median hourly rate for attorneys with 25 years in practice is $255, and the hourly rates at the 75th and 95th percentiles are $320 and $423, respectively. (Doc. 78-9 at 15.) The median hourly rates for attorneys with one to ten years of experience are in the $175 to $225 range, and the hourly rates at the 75th percentile are in the $200 to $258 range. (*Id.*) The median hourly rate for attorneys at larger firms with 50-plus attorneys – such as Baker & Hostetler here – is $278, with the 75th percentile at $356. (*Id.*) The median hourly rate for attorneys in the "insurance law (not torts)" field was $250, and the hourly rate at the 95th percentile was $335. (*Id.* at 16.) The approved rates are also similar to the national 2014 "42nd Annual Survey of Law Firm Economics," which indicated that the median hourly rate for equity partners in the mountain region is $420 (and $495 at the upper quartile), while the median hourly rate for an associate is $250 (and $361 at the upper quartile).[7] (Doc. # 88-1 at 15.)

---

[7] Home Loan cites this survey for the proposition that "[f]or lawyers in the Mountain region employer by firms like Baker Hostetler, the **standard** hourly rate for partners is $575 and for associates $361." (Doc. # 88 at 6) (emphasis added). However, the Court notes that the $575 and $361 rates come from the "ninth decile" (i.e., the 90th percentile) of the "Standard Hourly Billing Rates" chart – not the "median" column. (Doc. #88-1 at 15.)

*See also Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1259 (D. Colo. 2013) (approving requested rates not including a 10% discount of $450 per hour for Mr. Quirat and $350 per hour for Mr. Curtis, as well as $262 per hour, without a discount, for Mr. Schact); *Jankovic v. Exelis, Inc.*, Case No. 12–cv–01430–WJM–KMT, 2013 WL 1675936 (D. Colo. Apr. 17, 2013) (approving rate of $430 per hour for lead counsel).[8]

As for paralegal compensation, Travelers argues – with support from Mr. Baldwin's affidavit – that hourly rates between $215 and $230 are not reasonable, and proposes a rate of $125 an hour.  (Doc. # 87-5 at 1.)  The Quiat declaration provided no details whatsoever regarding Ms. Bliss's qualifications, her education, the number of years she has been employed as a paralegal, nor any other evidence justifying a rate above the average, reasonable hourly rate of $100-$110.  *See Hitchens v. Thompson Nat'l Properties, LLC*, No. 12-CV-02367-LTB-BNB, 2014 WL 2218094, at *3 (D. Colo. May 29, 2014) (noting that $110 per hour is a reasonable paralegal rate). The Court agrees that Home Loan's proposed paralegal rates are unreasonable, and accordingly approves a rate of $125 per hour for Ms. Bliss's work.

Lastly, although Travelers objects to an award of any attorney fees for the time spent preparing Plaintiff's Post-Trial Motion Regarding Damages, Attorney Fees and Costs, Pre-Judgment Interest, and Request for Entry of Final Judgment ("Fee Motion"), section 1116 does not limit the recovery of fees in this fashion.  *See Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 607 (Colo. App. 2008) (rejecting argument that a party was

---

[8] Any federal cases cited herein are cited only by way of persuasive authority.

"entitled to recover only the attorney fees incurred in preparing the motion to dismiss," because the statute allowing for attorney fees "does not so limit an award and instead expressly authorizes 'attorney fees in defending the action'"); *see also Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1254 (10th Cir. 1998) (noting that "[a]n award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application."); *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986) (same).

However, the Court believes that the amount of time spent on the Fee Motion and Reply – 85 total hours, *see* (Doc. ## 78-7 at 101, 88-3 at 2-3) – was excessive, particularly because both the Motion and the Reply failed to cite, much less analyze, many critical cases. "The district court  . . . should exclude from [the] initial [lodestar] calculation hours that were not 'reasonably expended.'" *Payan,* 2012 COA, ¶ 23 (quoting *Hensley*, 461 U.S. at 434).  Deductions include those for hours that are "excessive, redundant, or otherwise unnecessary." *Id.*; *see also Tallitsch*, 926 P.2d at 147.  Most notably, these papers failed to cite a single Colorado state case in support of the argument that Home Loan should be awarded costs under state law, *see* (Doc. ## 78 at 10-12, 88 at 9), nor was a single state law case cited in support of the argument that Home Loan should receive prejudgment interest under state law as of November 21, 2011, *see* (Doc. ## 78 at 12-13, 88 at 9-10).  Additionally, both the Fee Motion and the Reply failed to analyze relevant contrary authority regarding whether Home Loan should receive, for example, expert witness fees under Colorado law and

at what date prejudgment interest should commence.[9] *See* (Doc. ## 78 at 10-13, 88 at 9-10).  Furthermore, the Reply failed to respond to Travelers' rather detailed expense-by-expense analysis in Response to the Fee Motion, and merely reasserted, in a single paragraph, that its costs should be recoverable under state law.  *Compare* (Doc. # 88 at 9), *with* (Doc. # 87 at 11-15).  Accordingly, Court was forced to spend finite government resources conducting its own research; this research simply would not have been necessary had the Motion been adequately briefed.  In recognition of these serious shortcomings, the Court reduces the recoverable number of hours on the Fee Motion and Reply by 75%; accordingly, Home Loan may recover 21.25 hours of the time it spent on the Fee Motion and Reply, at the above-referenced rates.

### III.  COSTS

As a threshold matter, the Court must determine the appropriate legal rules in evaluating Home Loan's bill of costs.  If the recovery of costs is governed solely by Fed. R. Civ. P. 54(d), many of Home Loan's claimed costs cannot be recovered here, as that rule limits recoverable expenses to those enumerated in 28 U.S.C. § 1920 ("Section 1920").  The recoverable expenses under Section 1920 include fees for transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, and fees for exemplification and the costs of making copies of any materials when the copies were necessarily obtained for use in the case.

---

[9] Nor was this contrary authority difficult to find.   For example, if an attorney were to type the following plain language search into WestlawNext – ("prejudgment interest" and "commencement date" and "5-12-102") – he or she would find *Bowen v. Farmers Insurance Exchange*, 929 P.2d 14 (Colo. Ct. App. 1996), listed as the fifth result.

Travelers argues that taxing costs is a "procedural matter" and accordingly governed by federal law, that is, Fed. R. Civ. P. 54(d) and Section 1920.  Home Loan counters that costs not allowable under Rule 54(d) are recoverable here, because substantive state law applies, and its costs are recoverable under Section 1116.  The Court also notes that the general cost provision statute in Colorado is Colo. Rev. Stat. § 13-16-122.

In *Trierweiler v. Croxton & Trench Holding Corp.*, the Tenth Circuit explained how to determine whether to apply a state rule of civil procedure in a diversity case: "where a federal rule of procedure is directly on point, that rule applies.  Otherwise, in the 'typical, relatively unguided *Erie* choice,' courts are to heed the outcome-determination approach while also relying on the policies underlying the *Erie* rule: 'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"  *Trierweiler*, 90 F.3d 1523, 1539 (10th Cir. 1996) (quoting *Hanna v. Plumer*, 380 U.S. 460, 467–68 (1965)).  In *Garcia,* the Tenth Circuit applied *Trierweilder* and held that because Rule 54(b) was not directly on point and therefore consistent with an award of actual costs under a particular Colorado statute, the costs were taxable under that state statute. 209 F.3d at 1177-78.  The court noted that if a federal court did not apply the Colorado statute in situations where there was no conflict with the federal cost rules, the difference in availability for such costs in state actions versus federal diversity actions could lead to forum-shopping and could foster inequitable administration of the laws. *Id.* (citing *Hanna*, 380 U.S. at 467-68).

In other words, to the extent that a Colorado state statute authorizes the award of costs other than those costs authorized by 28 U.S.C. § 1821 ("Section 1821") and Section 1920, and there is no preemption by these Sections, such costs are recoverable. *Id.* at 1178. When evaluating a particular cost under Colorado law, the Court bears in mind that the party seeking costs "must provide the court with sufficient information and supporting documentation to allow a judge to make a reasoned decision for each cost item presented." *Brody v. Hellman*, 167 P.3d 192, 206 (Colo. App. 2007).

Specifically, Travelers contends that the following items may not be taxed as costs under Section 1920:

- Expert witness fees;
- Witness fees for witnesses who were representatives of Home Loan and testified as party representatives;
- Deposition costs (with the exception of the deposition of Clark Dahl);
- Delivery services and postage/fax, travel, mileage, parking, lodging, and meals; and
- Mediation costs.

Each objected-to cost is addressed in turn below.[10]

## A. Expert Witness Fees

Section 1116 does not explicitly authorize the recovery of expert witness fees, but Colo. Rev. Stat. § 13-33-102(4) does provide for additional compensation for expert witnesses. Nevertheless, in *Garcia*, the Tenth Circuit specifically held that notwithstanding the existence of Colo. Rev. Stat. § 13-33-102(4), federal law preempts the recovery of costs for expert witness fees, such that such fees are recoverable only

---

[10] The Court recognizes that Home Loan is not billing Travelers for the entire costs it incurred; specifically, the Quiat Declaration provided that "Home Loan received discounts on its invoices related to costs/expenses in the exercise of billing judgment in the amount of $5,055.77." (Doc. # 78-1 at 4.)

to the extent authorized under Sections 1821 and 1920. 209 F.3d at 1177 n. 5 (quoting *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 442 (1987)) ("'[I]t is clear that in §§ 1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses,' effectively preempting state law on such fees.'"); *see also Chaparral Res., Inc. v. Monsanto Co.*, 849 F.2d 1286, 1293 (10th Cir. 1988) (holding that because Colo. Rev. Stat. § 13–33–102(4) did not "**explicitly authorize** the assessment of expert witness fees as costs, the [district] court was bound by the limitations set out in the federal costs statute and, as a consequence, its taxation of expert witness fees must be limited" by Sections 1821 and 1920); *Bullock v. Wayne*, No. 08-CV-00339-PAB-KMT, 2010 WL 1258038, at *2 (D. Colo. Mar. 29, 2010) (denying a party's motion for costs for its expert fees under Colo. Rev. Stat. § 13-17-202, because "Fed. R. Civ.P. 54 and 28 U.S.C. §§ 1821 and 1920 effectively preempt a claim for actual costs in the form of expert witness fees.")

Section 1920(3) allows the Court to tax as costs "[f]ees and disbursements for . . . witnesses."   Expert witness fees are taxable under Section 1920(3) only to the relatively modest extent allowed by Section 1821.   *Crawford Fitting Co.,* 482 U.S. at 445; *see also Hull ex rel. Hull v. United States,* 978 F.2d 570, 572–73 (10th Cir. 1992) (holding that district court erred in awarding expert witness fees in excess of those allowed by Section 1821).   However, witness fees for expert witnesses that do not testify in court are not an allowable cost under 28 U.S.C. § 1920.   *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) (citing *Crawford Fitting*, 482 U.S. at 445); *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179 (10th Cir. 2005) (holding that it was

legal error for a district court to award fees and expenses incurred in connection with expert witnesses in excess of the standard witness fee listed in Section 1920(3) and fixed by Section 1821, because such matters were "not within the scope of [Section] 1920.")  Because the experts retained by Home Loan did not testify in court, no expert witness fees are recoverable here.

### B. Fees for Witnesses Who Testified As Party Representatives

Travelers argues that witness fees are not recoverable for any witnesses who testified as party representatives of Home Loan.  In support of this proposition, it cites Moore's Federal Practice, which provides that:

> As interpreted by the courts . . . 'witness' does not include parties to the action; a party may not collect fees as a witness, nor may those fees be taxed as costs.  **Whether a witness should be construed to be a real party in interest turns upon whether the witness attended primarily to testify or to direct the course of the proceedings**.

James Wm. Moore et Al., Moore's Federal Practice § 54.103[3][c] (3d ed. 1999) (emphasis added).  Although such authority might, at first blush, indicate that recovery of costs for such witnesses would be preempted by Section 1821, Travelers does not explain how Home Loan's party representatives "directed" the litigation, and the record indicates that these witnesses merely testified on behalf of Home Loan at trial.  *See WH Smith Hotel Services, Inc. v. Wendy's Intern., Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (holding that  although parties are not entitled to witness fees for their own appearances in court, when corporate officers and directors testified on behalf of a corporation,  costs could be assessed for their testimony because the witnesses were not personally involved in the litigation); *see also Barber v. Ruth*, 7 F.3d 636, 645-46 (7th Cir. 1993)

(holding that a district court did not err in taxing travel and subsistence witness fees as costs when beneficiaries of an estate testified at trial rather than managing the litigation); *Baker v. Echostar Commc'ns Corp.*, No. 06-CV0-1103, 2008 WL 5216794, at *2 (D. Colo. Dec. 11, 2008) (rejecting the party-representative argument and approving witness costs for such witnesses).  Consequently, all of the non-expert witness costs are recoverable here.

### C. Deposition Costs

Colorado law provides that "[a]ny costs of taking depositions **for the perpetuation of testimony**, including reporters' fees, witness fees, expert witness fees, mileage for witnesses, and sheriff fees for service of subpoenas" are recoverable. Colo. Rev. Stat. §  13-16-122 (emphasis added).  Here, Travelers does not argue that Home Loan's deposition costs were frivolous and not for the "perpetuation of testimony"; rather, it asserts that the deposition costs (with the exception of Mr. Dahl's) were not "necessarily obtained for use at trial."  (Doc. 87 at 14.)  However, this very strict standard has no authority in either state or federal law.  In *Cherry Creek Sch. Dist. No. 5*, 859 P.2d at 813, the Colorado Supreme Court implied that Colo. Rev. Stat. § 13-16-122 should be broadly construed, as "the list of items awardable as costs in section 13–16–122 is illustrative rather than exclusive," and specifically held that discovery deposition expenses are recoverable as costs under that statute.  Additionally, even under the stricter, federal standard, depositions need not be obtained for actual use at trial.  *See In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1149 (10th Cir. 2009) (holding that Section 1920 does not require a party to prove that depositions were

used in deciding a summary judgment motion or designated for use at trial, but only that the materials were "reasonably necessary for use in" the case at the time the expenses were incurred).

Here, all of the deposition expenses which Home Loan seeks to tax as costs were reasonably necessary (under federal law) and clearly "for the perpetuation of testimony" (under state law). All of the depositions (except for Katie Sweet's) were cited in Travelers' Summary Judgment Motion or Home Loan's Response. Additionally, because Ms. Sweet was one of the witnesses Travelers considered calling at trial, her deposition also met this standard. Accordingly, all of the deposition costs herein are recoverable by Home Loan.

### D. Counsel's travel, mileage, parking, lodging, and meals, and delivery services and postage/fax.

Home Loan seeks $2851.87 for travel, mileage, parking, lodging and meals incurred by its counsel during the course of litigation and trial. Although such expenses are not recoverable as costs under Section 1920, *see Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1180 (10th Cir. 2005), they do appear to be recoverable under Colorado state law. *See Cherry Creek Sch. Dist.*, 859 P.2d at 813 (affirming the district court's award of travel expenses counsel incurred in taking an out-of-state discovery deposition); *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1194 (Colo. App. 2011) (citing *Cherry Creek Sch. Dist.*, 859 P.2d at 813 and noting that "although section 13–16–122 does not list travel expenses counsel incurs in meeting with experts and clients as permissible costs, these costs may be awarded so long as the requesting party proves that the expenses were reasonable and necessarily incurred.")

Home Loan also seeks $348.70 for delivery services and postage/fax expenses. When such costs are not commingled with the general costs of conducting a law firm's business, they do not constitute overhead and, in the court's discretion, may be recovered. *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 389 (Colo. App. 2006) (collecting cases). In the alternative, there is also a body of federal precedent recognizing that certain expenses that do not fall within § 1920—*e.g.* delivery expenses, postage expenses, etc.—may nevertheless be awarded (usually as a part of the fee calculation) "if such expenses are usually charged separately in the area," that is, as a general practice in the local legal market. *Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir.1997) (citing *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) (holding that a district court did not err in refusing to reimburse firm for postage and telephone use, because it "properly found such costs are normally absorbed as part of the firms' overhead.")) The Quiat Declaration represents that Baker & Hostetler has separately itemized and billed these expense items to Home Loan, and Travelers does not contend that this practice is somehow atypical in the local legal market or normally billed as overhead. Accordingly, the Court will not question this $348.70 in expenses, and awards them to Home Loan as part of its fees.

### E. Mediation Costs

Home Loan seeks $1,511.25 in mediation costs, and submits an invoice in support providing that "[t]his bill is for your share of the total charges. It has been split between the [two] parties referenced above." (Doc. # 78-8 at 54.) Home Loan asserts that these costs are awardable, but it does not provide evidence – for instance, the

mediation agreement – indicating it reserved the right to seek recovery of this fee under

that agreement.  Accordingly, the Court denies recovery of Home Loan's portion of the

mediation costs, as it failed to demonstrate that this cost is awardable.  *See Valentine v.*

*Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1193 (Colo. App. 2011) (providing that

an agreement between the parties to pay half of the mediator's fees "precluded the

court from awarding these fees as costs" when a party failed to provide evidence that

it reserved the right to seek recovery of its portion of mediation fees.)

## IV.  <u>PRE-JUDGMENT INTEREST</u>

Interest questions in diversity cases are determined by state law.  *Pegasus*

*Helicopters, Inc. v. United Technologies Corp.*, 35 F.3d 507, 512 (10th Cir. 1994).

Accordingly, the Court applies Colo. Rev. Stat. § 5-12-102(1)(a), which states that a

prevailing party is entitled to pre-judgment interest when money has been "wrongfully

withheld," and that this interest is awarded "**from the date of wrongful withholding** to

the date of payment or to the date judgment is entered, whichever first occurs."  The

statute also provides that, at the election of the claimant, interest "shall be at the rate

of eight percent per annum compounded annually for all moneys . . . **after they are**

**wrongfully withheld or after they become due** to the date of payment or to the date

judgment is entered, whichever first occurs."  Colo. Rev. Stat. § 5-12-102(1)(a), (b).

Home Loan reported a claim on September 15, 2011, and Travelers began its

investigation that same day.  (Doc. # 87 at 16.)  On October 12, 2011, Travelers

requested further information and documentation pertaining to the claim, and Home

Loan provided such information on October 17, 2011.  (*Id.*)  On October 19, 2011,

Travelers informed Home Loan that it was continuing to investigate the claim because there appeared to be an issue about whether the property qualified for coverage. (*Id.* at 16-17.)  Travelers actually denied the claim in a letter dated November 21, 2011. (*Id.* at 17.)

As for commencement date of the pre-judgment interest, Home Loan argues that it is entitled to pre-judgment interest at 8% per annum compounded annually beginning on October 15, 2011, pointing to language in the insurance policy providing that "within 30 days after we reach agreement with you on what we owe you for a covered loss, we'll pay you that amount."  (Doc. # 78-9 at 67) (emphasis added).   In its view, then, October 15, 2011 represents "the date under the insurance policy on which the claim should have been timely paid and, as a result, the date on which Travelers' wrongful withholding of Home Loan's monetary benefit began."  (Doc. # 78 at 13.)

Travelers counters that interest should begin to accrue about 45 days later – as of November 21, 2011 – *i.e.*, the date Travelers actually denied the claim.  It cites regulations issued by the Colorado Division of Insurance, which provide that an insurer is not required to make a claim decision within 60 days if there is a "reasonable dispute" between the parties concerning the claim.  Colo. Div. of Ins. Reg. § 5-1-14(1); 4(A)(1)(a).  These regulations define "reasonable dispute" as including a situations in which "Information necessary to make a decision on the claim has not been submitted or obtained"; "Coverage under the policy for the loss claimed has not been determined;" or "Indicators are present in the application or submission of the claim and additional investigation is necessary."  *Id.* § 2(b).

This situation represents, by definition, a counterfactual inquiry: had Travelers made the correct decision as to insurance coverage, by what date would it have paid the claim?  Although the Colorado Supreme Court has held that "one who is damaged by a breach of contract is entitled to recover prejudgment interest of eight percent annually **from the time of the breach**," *Mesa Sand & Gravel*, 776 P.2d at 365, it has not determined at what point a breach occurs for prejudgment interest purposes in the insurance context.  The Court imagines this breach could be conceptualized as occurring at several different points – *e.g.*, the date when the insured provides notice of the claim to the insurer, the date after which sufficient investigation should have led the insurer to pay the benefit, and the insurer's refusal to pay the benefit.  However, the Colorado Court of Appeals has definitively held that the prejudgment interest should be awarded pursuant to § 5-12-102(1) as of the date when the insurer refused to pay the claim.  *Bowen v. Farmers Ins. Exch.*, 929 P.2d 14, 17 (Colo. App. 1996).  This case is more persuasive to the Court than the regulations cited by Travelers, because these regulations merely describe the procedure and circumstances under which penalties will be imposed by the agency for failure to make timely decisions and/or payment on first party claims.  Colo. Div. of Ins. Reg. § 5-1-14(1).

Travelers' policy provides only that it will pay claimants "within 30 days **after we reach agreement with you** on what we owe you for a covered loss, we'll pay you that amount."  (Doc. # 78-9 at 67) (emphasis added).  This provision is accordingly inapplicable here, as the parties were clearly unable to reach an agreement as to what

Travelers owed.[11]  Thus, Travelers did not begin its "wrongful withholding" of Home

Loan's claim award until **after** Travelers would have paid the claim in the normal course

of events, i.e., after an investigation was completed and Travelers notified Home Loan

of this fact.[12]  That the date of denial is the touchstone for prejudgment interest makes

good sense, as insurers routinely conduct investigations in making claims decisions,

particularly when the claim decision involves a claim of over $400,000.

Awarding prejudgment interest as of the date of Travelers' claim denial is also

implicitly supported by Colorado Supreme Court caselaw.  In *Goodyear Tire & Rubber*

*Co. v. Holmes*, 193 P.3d 821, 826 (Colo. 2008), the court noted that

> When damage is measured by diminution in value, interest begins to
> accrue as of the date that the plaintiff suffered injury to his property,
> because the plaintiff will be unable to earn a return on the amount of
> damages.  On the other hand, when damage is measured by cost of repair
> or replacement, interest does not begin to accrue until the plaintiff actually
> spends money on the repair or replacement, because the plaintiff is able
> to earn a return on the money until he spends it.

Replacement damages for a breach of contract are analytically similar to damages for

an improperly denied insurance claim, insofar as Home Loan did not begin to incur

costs in performing its own repairs on the property until after Travelers denied the claim.

In other words, it was still earning interest on the money it was forced to use in place of

---

[11] Indeed, according to the quoted policy provision, had Travelers investigated and agreed that it was going to pay Home Loan's claim and informed Home Loan of this fact on November 21, 2011, it would have been able to wait until December 21, 2011 to actually make the claims payment.

[12] The Court notes that if Home Loan had provided evidence that Travelers made an official decision to deny the claim **prior to** November 21, 2011, but stalled in informing Home Loan of that fact, the earlier date would constitute the relevant date of refusal.  *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 364 (Colo. 1989) ("The purpose of [S]ection 5-12-102 is to discourage a person responsible for payment of a claim to stall and delay payment until judgment or settlement.")  However, no such evidence is before the Court.

the unreasonably denied claim money until the denial occurred.  Additionally, awarding

prejudgment interest **before** Travelers completed its investigation would effectively

provide a windfall to Home Loan, insofar it would allow it to recover **more** than Home

Loan would have received had Travelers made the decision to pay the claim.   The plain

language of the statute provides that "interest shall be an amount which **fully**

**recognizes the gain or benefit realized by the person withholding such money or**

**property**."   Colo. Rev. Stat § 5-12-102(1); *see also Goodyear Tire & Rubber Co.*, 193

P.3d at 826 (Colo. 2008) ("Generally, interest rates compensate for the time value of

money. . . . the purpose of prejudgment interest [under Section 5-12-102] is to

**reimburse** the plaintiff for inflation and lost return.")

As for postjudgment interest, the federal postjudgment interest rate applies in

diversity cases.  *Latham v. First Marine Ins. Co.*, 16 F. App'x 834, 841 (10th Cir. 2001).

Postjudgment interest cannot be applied until the entry of judgment.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Fee Motion is GRANTED IN PART and DENIED

IN PART.  Specifically, the lodestar is recalculated as follows:

| <u>Name</u> | <u>Pre-Fee Motion Hours</u> | <u>Post-Fee Motion Hours with 75% Reduction</u> | <u>Total Hours</u> | <u>Hourly Rate</u> | <u>Total</u> |
|---|---|---|---|---|---|
| Mr. Quiat | 235.25 | (5.25+3) *.25 = 2.06 | 237.31 | $420 | **$99670.2** |
| Mr. Curtis | 11.25 | | 11.25 | $375 | **$4218.75** |
| Mr. Schact | 21.5 | (20.25+6) *.25 = 6.56 | 28.1 | $250 | **$7025** |
| Ms. Donnelly | 427 | | 427 | $250 | **$106750** |
| Mr. Thompson | 26 | | 26 | $175 | **$4550** |

| Name | Pre-Fee Motion Hours | Post-Fee Motion Hours with 75% Reduction | Total Hours | Hourly Rate | Total |
|------|------|------|------|------|------|
| Ms. Bliss | 168.5 | (19.25+23.35) *.25 = 10.65 | 179.15 | $120 | **$21498** |
| | | | | **TOTAL:** | **$243711.95** |

It is FURTHER ORDERED that Plaintiff shall be awarded $243,711.95 in attorney fees;

It is FURTHER ORDERED that Plaintiff shall be awarded $1,399,449.00 in total damages;

It is FURTHER ORDERED that Plaintiff shall be awarded $10,146.42 in costs ($20,800.24 minus $9142.57 in expert witness fees and $1511.25 in mediation costs);

It is FURTHER ORDERED that the damages and costs award shall be subject to a prejudgment interest rate of 8% per annum, as of November 11, 2011;

It is FURTHER ORDERED that the damages and costs award shall be subject to a postjudgment interest rate at the federal interest rate as of the date of final judgment;

It is FURTHER ORDERED that this case is DISMISSED in its entirety.

DATED:  November 25, 2014

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge